**24-1100**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**HYUNDAI STEEL COMPANY,**

**Plaintiff-Appellant**

**v.**

**UNITED STATES,**

**Defendant-Appellee**

**NUCOR CORPORATION, SSAB ENTERPRISES LLC, STEEL DYNAMICS, INC.,**

**Defendants**

---

**Appeal from the United States Court of International Trade in Case No. 1:21-cv-00536-JCG, Judge Jennifer Choe-Groves.**

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT HYUNDAI STEEL COMPANY**

---

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey
Stephen A. Morrison

MORRIS, MANNING & MARTIN LLP
1333 New Hampshire Avenue, NW
Suite 800
Washington, D.C. 20036
(202) 216-4116

*Attorney for Plaintiff-Appellant*
*Hyundai Steel Company*

April 26, 2024

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 24-1100

**Short Case Caption** Hyundai Steel Company v. United States

**Filing Party/Entity** Hyundai Steel Company

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/26/2024

Signature: /s/ Brady W. Mills

Name: Brady W. Mills

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Hyundai Steel Company | | Kia is a publicly held company that owns more than 10% of Hyundai Steel Company. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Morris, Manning & Martin, LLP | Jordan L. Fleischer | Eugene Degnan |
| Ryan R. Migeed | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>NOTICE OF RELATED CASE INFORMATION</u>

| | |
|---|---|
| **Case Number** | 24-1100 |
| **Short Case Caption** | Hyundai Steel Company v. United States |
| **Filing Party/Entity** | Hyundai Steel Company |

**Instructions:** Do not duplicate information. The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. *See* Fed. Cir. R. 47.5(b). Attach additional pages as needed. This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case. Fed. Cir. R. 47.5(b)(1).

Hyundai Steel Co. v. United States
U.S. Court of International Trade No. 21-00304
U.S. Court of International Trade

☐    Additional pages attached

**FORM 9A. Notice of Related Case Information**

Form 9A (p. 2)
March 2023

2.  **Names of all parties involved in the cases listed above.**  Do not duplicate the names of parties.   Do not relist the case information.   Fed. Cir. R. 47.5(b)(2)(A).

> Hyundai Steel Company
>
> United States
>
> Nucor Corporation

☐    Additional pages attached

3.  **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates.    Do not relist case information and party names.  Fed. Cir. R. 47.5(b)(2)(B).

> Morris, Manning, and Martin LLP: Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Jordan L. Fleischer, Nicholas C. Duffey
>
> Wiley Rein LLP: Alan H. Price, Christopher B. Weld, Maureen E. Thorson, Tessa V. Capeloto, and Adam M. Teslik
>
> U.S. Department of Justice: Bryan M. Boyton, Patricia M. McCarthy, Claudia Burke, Elizabeth Anne Speck,
>
> U.S. Department of Commerce: Ayat Mujais

☐    Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/26/2024

Signature:    /s/ Brady W. Mills

Name:    Brady W. Mills

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.   SUMMARY OF ARGUMENT.................................................... 1

III.  ARGUMENT............................................................................... 2

    **A.** The GOK Did Not Confer a Benefit on Hyundai Steel by Providing Port Rights as Payment for Hyundai Steel's Construction of the Port. ............ 2

    **B.** This Court's Decision in *AK Steel* is Inapposite. ...................................... 6

    **C.** Defendant-Appellee Misreads the Court of International Trade Opinions Addressing the Definition of "Benefit." .................................................. 15

IV.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. United States,*
192 F.3d 1367 (Fed. Cir. 1999) ...................................................... *passim*

*AK Steel Corp. v. United States,*
226 F. 3d 1361 (Fed. Cir. 2000) ...................................................8

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors,*
745 F.2d 677 (D.C. Cir. 1984) ...................................................14

*Government of Sri Lanka v. United States,*
308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) ............................ *passim*

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (1989) ...................................................2

*Hyundai Steel Co. v. United States,*
615 F. Supp. 3d 1351 (Ct. In't Trade 2023) ............................12

*Hyundai Steel Co. v. United States,*
658 F. Supp. 3d 1331 (Ct. Int'l Trade 2023) ........................ *passim*

*Lamie v. U.S. Trustee,*
540 U.S. 526 (2004) ...................................................2, 8

*Stone v. Immigration and Naturalization Serv.,*
514 U.S. 386 (1995) ...................................................8

**Statutes**

19 U.S.C. § 1677(5)...................................................8

19 U.S.C. § 1677(5)(E) ...................................................*passim*

19 U.S.C. § 1677(5)(E)(i)-(iv)...................................................3

**Regulations**

19 C.F.R. § 351.503 ...................................................9

19 C.F.R. § 351.503(b)...................................................3, 9

19 C.F.R. § 351.503(b)(1) ...................................................16

**Other Authorities**

Uruguay Round Agreements Act ("URAA"), Statement of Administrative Action ("SAA"), H.R. Rep. No. 103-316, reprinted in 1994 U.S.C.C.A.N. 4040...................6, 8, 9, 14

*Certain Hot-Rolled Steel Flat Prods. from the Republic of Korea: Final Results of Countervailing Administrative Review; 2018*, 86 Fed. Reg. 47,621 (Dep't Commerce Aug. 26, 2021) ................................................................................................3, 4

*Countervailing Duties*, 63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998)...........................9

*Final Affirmative Countervailing Duty Determinations and Final Negative Critical Circumstances Determinations: Certain Steel Prods. From Korea*, 58 Fed. Reg. 37,338 (Dep't Commerce July 9, 1993)........................................................7, 8, 9, 12, 13

*Notice of Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Prods. from the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002) .................................................................9, 10

*Notice of Final Results of Countervailing Duty Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea*, 72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007)...................................................................10, 11

## I.     <u>INTRODUCTION</u>

Plaintiff-Appellant Hyundai Steel Company ("Hyundai Steel") hereby submits its reply to the brief of Defendant-Appellee the United States.

## II.     <u>SUMMARY OF ARGUMENT</u>

This case boils down to one issue: whether a countervailable "benefit" exists pursuant to 19 U.S.C. § 1677(5)(E) where a government reimburses a private party for a debt owed pursuant to a contract, and that reimbursement does not exceed the amount of the debt (*i.e.,* it is not excessive).  Instead of tackling this simple question head-on, Defendant-Appellee tries to shield itself under the blanket of *AK Steel v. United States*, a decades-old case that does not address the statutorily enumerated "benefit" at issue in this case and that is factually distinguishable.  In relying on this inapposite case, Defendant-Appellee, like the U.S. Department of Commerce ("Commerce"), fails to address the issue at the heart of this case, and fails to adequately consider the undisputed fact that the Government of Korea ("GOK") provided Hyundai Steel with the right to collect certain fees from users of the port not to bestow some advantage or profit, but as reimbursement for a contractual

debt.  This is <u>not</u> a countervailable benefit under 19 U.S.C. § 1677(5)(E), and

Commerce's conclusion to the contrary is not in accordance with law.

## III.   <u>ARGUMENT</u>

### A.    **The GOK Did Not Confer a Benefit on Hyundai Steel by Providing Port Rights as Payment for Hyundai Steel's Construction of the Port.**

While, as discussed in greater detail below, Defendant-Appellee spends

considerable time trying to dodge the legal issue in this case by relying on this

Court's inapposite decision in *AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed.

Cir. 1999) ("*AK Steel*"), it fails to rebut Hyundai Steel's claim that, when viewed in

context, it is plain that Hyundai Steel did not receive a countervailable benefit under

19 U.S.C. § 1677(5)(E).  Although Commerce attempts to downplay the importance

of the new statutory provision for "benefit" to try and salvage its heavy reliance on

*AK Steel*, that attempt fails because it is well-settled that the "starting point in

discerning congressional intent is the statutory text."  *Lamie v. U.S. Trustee*, 540

U.S. 526, 534 (2004).  When the statute's language is plain, as it is here, "the sole

function of the courts . . . is to enforce it according to its terms."  *Hartford

Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (1989).

A plain language reading of the applicable countervailing duty statute and

regulations makes clear that the GOK did not confer a countervailable benefit on

Hyundai Steel.  Under the countervailing duty statute, "{a} benefit shall normally

be treated as conferred when there is a benefit to the recipient." 19 U.S.C.

§ 1677(5)(E). As the U.S. Court of International Trade ("CIT") explained, "A

benefit is an '{a}dvantage, profit {or} good.'" *Hyundai Steel Co. v. United States*,

658 F. Supp. 3d 1331, 1335 (Ct. Int'l Trade 2023) ("Hyundai Steel") (quoting

Oxford English Dictionary (online ed.)). Hyundai Steel noted in its opening brief

that this definition of "benefit" aligns with the examples of benefits provided in 19

U.S.C. § 1677(5)(E)(i)-(iv), all of which provide the recipient with an advantage,

profit or good. Hyundai Steel Br. at 14. This definition also aligns with 19 C.F.R.

§ 351.503(b), the regulation under which Commerce determined that Hyundai Steel

received a benefit, *see* Appx16503, which provides that a benefit will normally be

conferred where the recipient "pays less for its inputs . . . than it otherwise would

pay in the absence of the government program, or received more revenues than it

otherwise would earn," 19 C.F.R. § 351.503(b). It is thus clear that a

countervailable benefit requires that the recipient be provided an advantage or profit

from the government program at issue.

In the *Final Results*, Commerce determined that Hyundai Steel received a

benefit because the GOK allowed Hyundai Steel to collect berthing fees and certain

other fees that the GOK would have been entitled to collect, but for its agreement

with Hyundai Steel. *See Certain Hot-Rolled Steel Flat Prods. from the Republic of

Korea: Final Results of Countervailing Administrative Review; 2018*, 86 Fed. Reg.

47,621 (Dep't Commerce Aug. 26, 2021), Appx16511–Appx16512 ("*Final Results*"), and accompanying Issues and Decision Mem., Appx16503.  In finding that a benefit existed, Commerce refused to consider that the fees Hyundai Steel was contractually allowed to collect were repayment to Hyundai Steel for its construction of the port, and the value of those fees did not exceed the construction costs.  *See* Commerce's Final Results of Redetermination Pursuant to Court Remand (Apr. 10, 2023), Appx00048–Appx00051; *see also* Appx16503–Appx16504 (refusing to consider in the *Final Results* the context under which Hyundai Steel was afforded port usage rights).  Ignoring the context under which these collection rights were bestowed upon Hyundai Steel by the GOK was legal error because this context makes plain that Hyundai Steel received no "'[a]dvantage, profit, [or] good'" and thus no countervailable benefit.  *Hyundai Steel Co.*, 658 F. Supp. 3d at 1336.

The agreement that Hyundai Steel and the GOK entered into provided that Hyundai Steel would construct a wharf at the North Incheon Harbor.  Appx03801.  Under the agreement, the GOK provided reimbursements of approximately one-third of Hyundai Steel's construction costs during the construction period between 2004 and 2007.  *See* Appx03801 (providing the GOK's reimbursements to Hyundai Steel) ; Appx13031 (providing Hyundai Steel's total construction costs).  As compensation for the remaining construction costs, the GOK provided Hyundai

Steel with the right to collect certain fees, including berthing fees, from third party users of the port. *See* Appx03802; Appx05711–Appx05891 (North Incheon Harbor Agreement); Appx05893–Appx05994 (Revised North Incheon Harbor Agreement), Appx13281–Appx13289. Importantly, Hyundai Steel was still required to pay for usage of the port. *See* Appx03803; Appx 13290–Appx13293 (explaining that Hyundai Steel did not receive any free usage rights or fee exemptions and listing all of the fees that it paid or were not applicable to it). Hyundai Steel was only allowed to collect these third-party user fees for a finite period of time which was calculated to last only as long as necessary to reimburse Hyundai Steel for its construction costs. *See* Appx13034–Appx13035. In other words, Hyundai Steel did not profit or gain an advantage through its construction of the wharf. Nothing on the administrative record or in Commerce's analysis of the program demonstrates that the reimbursements or collected fees exceeded the costs incurred by Hyundai Steel in financing and building the port infrastructure, or that Hyundai Steel was reimbursed over the market rate for construction of such infrastructure.

To the contrary, the record establishes that Hyundai Steel has not collected certain fees that it could have collected pursuant to its contractual rights, Appx13281–Appx13294. During the 2018 period of review, no third parties used the port and Hyundai Steel did not collect many of the fees that were factored into the formula used to calculate the length of time needed to reimburse Hyundai Steel.

5

*See* Appx13283–Appx13284.  The record also shows that Hyundai Steel has collected less income pursuant to its port usage rights than was originally projected at the time the contract was entered into.  *Compare* Appx05996 *with* Appx05976; *see also* Appx13359 (calculation of fees not collected by Hyundai Steel).  It is therefore clear that the GOK did not confer a benefit to Hyundai Steel, as Hyundai Steel has not received any "advantage, profit, or good" as a result of its agreement to build the port infrastructure.  The GOK's provision of the right to collect berthing fees and certain other third-party fees was nothing more than repayment of the debt it owed Hyundai Steel for construction of port infrastructure.

Accordingly, this Court should find that Commerce's determination that Hyundai Steel's port usage rights confer a countervailable benefit is not supported by substantial evidence and is otherwise not in accordance with law.

### B.    This Court's Decision in *AK Steel* is Inapposite.

Defendant-Appellee United States and Commerce's heavy reliance on *AK Steel* as support for the treatment of these port rights as a countervailable benefit is misplaced.  *See* Br. for Defendant-Appellee, United States ("Def.-Appellee Br.") at 14-18, ECF No. 24.  First, *AK Steel* was decided under the pre-Uruguay Round Agreements Act ("URAA") countervailing duty statute that did <u>not</u> contain a provision addressing what constitutes a countervailable benefit.  Nor did Commerce's countervailing duty regulations that address what constitutes a benefit

6

exist at the time *AK Steel* was decided.  Second, Commerce's administrative

practice evolved after the *AK Steel* decision to one that examined whether the

provision of port rights resulted in the provision of an excessive benefit.  Third, the

underlying facts in *AK Steel* are distinguishable from the facts in this case.  Namely,

the respondent in *AK Steel* received free usage of certain port facilities, whereas

Hyundai Steel did not receive free usage of the port.  Finally, the *AK Steel* decision

was based on substantial evidence and did not grapple with the legal issue presented

in this case.  These distinctions render *AK Steel* inapposite.

The underlying Commerce decision at issue in *AK Steel* was the 1993

determination in *Steel Products from Korea*.  *AK Steel*, 192 F.3d at 1369; *see also*

*Final Affirmative Countervailing Duty Determinations and Final Negative Critical*

*Circumstances Determinations: Certain Steel Prods. From Korea*, 58 Fed. Reg.

37,338 (Dep't Commerce July 9, 1993) ("*Steel Products from Korea*").  In the

administrative proceeding at issue in *Steel Products from Korea*, a private Korean

company, POSCO, built and paid for certain port berths, ceded ownership of the

port berths to the GOK upon completion, and in return the GOK exempted POSCO

from the payment of dockyard fees that were normally required to be paid to the

GOK for using the port, and also gave it the right to collect certain other fees.  *AK*

*Steel*, 192 F.3d at 1382.  That is, POSCO was given "free usage" of the port.  *See*

7

*Steel Products from Korea*, 58 Fed. Reg. at 37,347 (referring to exemption from the payment of dockyard fees as "free use" of the port).

Because the *Steel Products from Korea* case was from 1993, the relevant statute that was before this Court in *AK Steel* pre-dated enactment of the URAA, which amended the countervailing duty statute by adding a statutory provision for "benefit conferred." *Compare* 19 U.S.C. § 1677(5)(E) (2012), *with* 19 U.S.C. § 1677(5) (1988). While, as Defendant-Appellee trumpets in its brief, *see* Def.-Appellee Br. at 18, the definition provided for in the URAA may have "reflect{ed} the 'benefit-to-the-recipient' standard . . . for identifying and measuring subsidies," *see* Uruguay Round Agreements Act ("URAA"), Statement of Administrative Action ("SAA"), H.R. Rep. No. 103-316, reprinted in 1994 U.S.C.C.A.N. 4040, 4240, the fact remains that *AK Steel* was decided under pre-URAA law.[1] That pre-URAA version of the statute did not contain a benefit provision and thus *AK Steel* does not address the statutory provision that lies at the heart of this appeal.

---

[1] The Supreme Court has noted that "{w}hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 397 (1995); *cf. Lamie v. U.S. Trustee*, 540 U.S. at 534 ("The starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes."); *AK Steel Corp. v. United States*, 226 F. 3d 1361, 1372–73 (Fed. Cir. 2000) (finding that despite the SAA stating that "no change is intended in the circumstances under which export price {("EP")} . . . versus constructed export price {("CEP")} . . . are used," the pre-URAA test for determining whether sales were purchase price and exporters sale price (the predecessor terms to EP and CEP, respectively) were not consistent with the amended statute).

Nor did *AK Steel* address Commerce's benefit regulation that is at issue in this appeal, 19 C.F.R. § 351.503.  Following the enactment of the URAA, Commerce promulgated new regulations to implement the new law. *Countervailing Duties*, 63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998).  In those new regulations, Commerce first established the regulatory provision on benefit that it applied to the provision of port rights issue in this case.  *See* Appx16503 (stating that a benefit was conferred under 19 C.F.R. § 351.503(b)); *Countervailing Duties*, 63 Fed. Reg. at 65,408 (promulgating 19 C.F.R. § 351.503).  Thus, this regulation did not exist at the time this Court reviewed the *Steel Products from Korea* case.

Therefore, in *AK Steel*, Commerce did not apply, and this Court did not address, the new statutory and regulatory provisions on "benefit" to find that POSCO received a countervailable subsidy.  This renders *AK Steel* of limited relevance to the legal issue presented in this appeal.

Furthermore, Commerce's practice has evolved since *Steel Products from Korea*, which was the underlying case reviewed by this Court in *AK Steel*.  This evolution of Commerce's practice and use of an "excessive benefit" framework for analyzing this type of program in Korea further limits the relevance of the *AK Steel* decision.  For example, in *CR from Korea*, Commerce found that the GOK conferred a benefit to the respondent, Dongbu, because the GOK had provided port

usage rights for an excessive period of time such that it was "over-compensating or over-rebating Dongbu" and the company was profiting. *See Notice of Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Prods. from the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002) ("*CR from Korea*"), and accompanying issues and decision mem. ("CR from Korea IDM") at 50.  Commerce continued to use this framework in *CTL Plate from Korea*, determining that the GOK conferred a benefit to the respondent based on the excessive, fifty-year port operating period that "effectively render{ed} {respondent} the owner of the facility." *Notice of Final Results of Countervailing Duty Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea*, 72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007) ("*CTL Plate from Korea*"), and accompanying issues and decision mem. ("CTL Plate from Korea IDM") at 7.

Defendant-Appellee argues that Commerce's discussion in these cases was made in the context of a specificity analysis. *See* Def.-Appellee Br. at 19.  This is incorrect.  While Commerce may have considered the length of time that Dongbu received port rights in determining whether the rights they were provided were specific in *CR from Korea*, it is also clear that Commerce analyzed whether the length of port rights provided an excessive benefit, such that Dongbu profited in order to find that there was an actual benefit.  CR from Korea IDM at 49-50

("{W}e find that Dongbu is *receiving a benefit* from the GOK by not having to pay usage fees for the use of the port berth *for such an extended period of time*.") (emphasis added).  This distinction was made even clearer in *CTL Plate from Korea*, in which Commerce first discussed that the port usage rights were *de facto* specific because "only a few companies representing limited industries" received such rights.  CTL Plate from Korea IDM at 7.  Only after addressing specificity did Commerce turn to its analysis of whether the port usage rights given to respondent conferred a benefit and found that it did "due to the lengthy {50-year} duration of the lease" that rendered respondent the owner of the port facility.  *Id*. at 7.  It is thus clear that, while Commerce may also have considered the excessive length of port rights in assessing whether the rights were "specific" to a respondent, Commerce also considered whether a term length was excessive in its analysis of whether the GOK conferred a benefit.[2]

_____

[2] Defendant-Appellee also argues that application of an "excessive benefit" standard is not required by statute or regulation.  *See* Def.-Appellee's Br. at 20–21.  However, Defendant-Appellee misunderstands the thrust of Hyundai Steel's argument.  First, Hyundai Steel does not argue that the "excessive benefit" standard is required by statute or regulation—just that Commerce has developed a practice over many years of finding that a benefit was conferred only where respondents were granted port rights for an excessive period of time or to an extent where they profited from use of their port rights.  Second, as Hyundai Steel noted in its opening brief, determining whether a benefit exists depends on whether the port rights conferred to a company are excessive when compared to the costs incurred in constructing port facilities (*i.e.*, in excess of), not that the port rights provide an exorbitant or unreasonable profit.  *See* Hyundai Steel Br. at 25.  The series of cases

*AK Steel* is also factually distinguishable. *See Hyundai Steel Co. v. United States*, 615 F. Supp. 3d 1351, 1355 (Ct. In't Trade 2023), Appx00008–Appx00009 (noting that although the facts in *AK Steel* were similar, the evidence on the administrative review differed in this case). Defendant-Appellee wrongly suggests that Hyundai Steel was allowed to use the port infrastructure it built free of charge, just as POSCO had in *Steel Products from Korea*. *See* Def.-Appellee Br.at 5–6 (incorrectly stating that Hyundai Steel was granted a period of "free use" of the port"); *id*. at 14 and 15 (incorrectly stating that Hyundai Steel argued that "non-payment of port usage fees" was consideration for its construction of the port). This is not correct. The record shows that Hyundai Steel pays the GOK for its use of the port. *See* Appx13290–Appx13293; Appx03802–Appx03804 (noting that the only income Hyundai Steel received was for berthing fees from third-party users). In its response to Commerce's initial questionnaire, Hyundai Steel reported that the only income it had received pursuant to its port rights was from berthing fees from

---

involving port rights clearly establish that where a party profits from construction of a port, *see* CR from Korea IDM at 49-50, or has been granted port rights for such a prolonged period of time that it is clearly overcompensated, *see* CTL from Korea IDM at 11, Commerce's practice is to find that a benefit exists. However, where the record demonstrates that port rights last only until a company's investment has been recovered, no benefit exists. The analysis in these cases is thus consistent with the statutory definition of "benefit" which requires that a party receive an advantage, profit or good from usage of a government program for a benefit to have been conferred.

third-party shipping companies, and that it had not received any benefits from other fees, including wharfage fees, demurrage, port dues, anchorage, or laid-up charges. Appx03802–Appx03803; *see also* Appx10472 (reporting in first supplemental questionnaire that Hyundai Steel was not exempt from wharfage fees and water occupancy and usage fees).  In a supplemental questionnaire, Commerce again inquired whether Hyundai Steel obtained any additional usage rights or exemptions for dues otherwise payable as a result of its operation of the port.  Appx13290. Hyundai Steel reported that it did not obtain any free usage rights or fee exemptions other than the ability to collect the third-party user fees.  Appx13293.  The only right given to Hyundai Steel by the GOK was thus the right to collect certain fees from other users of the port to recoup its investment in constructing the port.  There were no free usage rights bestowed, as there were in *AK Steel*.

Additionally, in *AK Steel*, the GOK forwent revenue by not collecting fees for POSCO's use of the port facilities.  *See Steel Products from Korea*, 58 Fed. Reg. 37,347-48.  The GOK also gave POSCO the right to collect fees up to the amount of its investment in building the port.  *Id*. at 37,347.  In other words, in *AK Steel*, POSCO was receiving a benefit that went above and beyond its investment costs.  *Id*. at 37,348 (noting that POSCO's collection of fees was to recoup its investment, while exemption from dockyard fees was based on a statutory provision entitling companies to build port berths and deed them back to the GOK).

Finally, *AK Steel* only addressed whether Commerce's determination was supported by substantial evidence and did not probe whether it was otherwise in accordance with law. *AK Steel*, 192 F.3d at 1382 ("We are convinced that Commerce's determination <u>is supported by substantial evidence</u>.") (emphasis added). In this appeal, Hyundai Steel argues that Commerce's determination is not in accordance with 19 U.S.C. § 1677(5)(E) because Hyundai Steel did not receive a benefit where the value of its port-usage rights did not exceed its construction costs. *See* Hyundai Steel Br. at 13-20; s*ee also Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors*, 745 F.2d 677, 683 (D.C. Cir. 1984) ("{A}n agency action which is supported by the required substantial evidence may in another regard be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"). While the "benefit to recipient" standard may have not changed under the URAA, *see* SAA at 4240, the URAA and subsequent regulations fleshed out the meaning of "benefit" by providing examples of benefits that are countervailable, *see* 19 U.S.C. § 1677(5)(E). These examples help illustrate that a benefit must, like its dictionary definition, provide the recipient with some sort of "advantage, profit, or good." *See id.*; *see also Hyundai Steel*, 658 F. Supp. 3d at 1335. As discussed, in *AK Steel* this Court did not analyze any statutory or regulatory provisions related to what constituted a "benefit," and it is thus not applicable here where Hyundai Steel argues that the statutory language of 19 U.S.C. § 1677(5)(E) prohibits

Commerce from finding a benefit where a company, like Hyundai Steel, does not receive an advantage, profit, or good.

Last, but not least, the truncated analysis in *AK Steel* is limited to one paragraph in which this Court restated Commerce's determination that a benefit was conferred "regardless of whether the . . . port berths were built directly by the Korean government or by POSCO" and stating that the Court was "convinced that Commerce's determination {was} supported by substantial evidence. *AK Steel*, 192 F.3d at 1382. Not that brevity is never a virtue, but this one sentence affirmance of Commerce's determination gives no insight into what the definition of "benefit" was or why, under the facts of that case, the Court found that substantial evidence supported Commerce's determination that a benefit was conferred to POSCO.

### C.    Defendant-Appellee Misreads the Court of International Trade Opinions Addressing the Definition of "Benefit."

Defendant-Appellee unpersuasively argues that the CIT's decisions in *Hyundai Steel Co. v. United States*, 658 F. Supp. 3d 1331 (Ct. Int'l Trade 2023) ("*Hyundai Steel*") and *Government of Sri Lanka v. United States*, 308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) ("*GOSL*") are not applicable to the case at hand or are distinguishable. *See* Def.-Appellee Br. at 21-26. While Hyundai Steel recognizes that these cases are not binding on this Court, each of these cases grappled head-on with the statutory definition of "benefit conferred." As Hyundai Steel noted in its opening brief, *Hyundai Steel* involved the exact same ports rights that are at issue in

this case. Hyundai Steel Br. at 15. These cases are thus relevant to the issue before this Court.

In *Hyundai Steel*, the CIT addressed the statutory language of 19 U.S.C. § 1677(5)(E). Looking first to the dictionary definition of "benefit" the court noted that a "benefit" requires some sort of "advantage, profit {or} good." *Hyundai Steel*, 658 F. Supp. 3d at 1335. The court found that the plain language definition of "benefit" was confirmed by the statutory context as 19 U.S.C. § 1677(5)(E)'s four examples of countervailable benefits, as well as Commerce's "regulatory catch-all provision" defining benefit at 19 C.F.R. § 351.503(b)(1), all involved the provision of some advantage, profit or good. *Id.* at 1335–36. Finally, the court looked at the port rights program from a practical perspective. The court reasoned that private companies, such as Hyundai Steel, do not "gratuitously build government-owned infrastructure; they demand something in return." *Id*. at 1336. Thus, the court concluded that Commerce erred as a matter of law by failing to consider Hyundai Steel's costs in constructing the port facilities to determine whether Hyundai Steel received a benefit. *Id.* "If, as Hyundai contends, the value of the port-usage rights did not exceed its construction costs, then the company received no '[a]dvantage, profit, [or] good,' and thus no countervailable benefit." *Id.*

Likewise, in *GOSL*, the CIT found that unlike payments through grants, loans, or equity infusions, interest free repayment of debt is not a "benefit," as it

results in a detriment to the company providing the loan, rather than its benefit.

GOSL, 308 F. Supp. 3d at 1382. Defendant-Appellee argues that the program at

issue in *GOSL* is not comparable to the port rights at issue here because the

program at issue in *GOSL* was implemented for the purpose of supporting other

beneficiaries. *See* Def.-Appellee Br. at 25. As an initial point, determination of

whether a company has received a benefit turns on whether the company has been

provided some advantage, profit, or good; whether a program was designed to

support other beneficiaries is irrelevant. Furthermore, the *GOSL* decision does not

turn on whether the program supports other beneficiaries and so there was no

reason why Hyundai Steel would have put an emphasis on this point. Nevertheless,

the goal of the Act on the Private Participation in Infrastructure, under which the

agreement between Hyundai Steel and the GOK was entered into, is to help the

GOK provide public infrastructure through investments by non-government

entities. *See* Appx13031 (noting that the program in which Hyundai Steel

participated "is designed to provide neither financial contributions nor any benefits

to participating companies, but to attract private companies to make investments in

constructing social infrastructures so as to allow the government to spend its

national budget more efficiently"). Additionally, the construction of the port

contributed to the public good as ownership of the port has reverted to the GOK.

While Hyundai can also be characterized as a beneficiary of the port, the GOK and

Korean public at large can also be considered beneficiaries. It is thus wrong to

suggest that the port facilities only benefit Hyundai Steel.

Defendant-Appellee further attempts to distinguish *GOSL* based on the fact

that (1) the transactions at issue in that case resulted in a detriment to the

respondents and (2) the respondents in *GOSL* were required to buy rubber at an

inflated price and then reimbursed for the difference. *See* Def.-Appellee Br. at 25.

These attempts are unavailing.

First, the administrative record in this case demonstrates that building the

port has been detrimental to Hyundai Steel. The repayment formula provided in the

contract between Hyundai Steel and the GOK assumed that Hyundai Steel would

collect certain fees from other port users. *See* Appx13035–Appx13036. However,

because no third parties used the port during the period of review, Hyundai Steel

did not collect many of the fees that were contractually contemplated to reimburse

Hyundai Steel for its construction of the port. *See* Appx13284–Appx13289. As a

result, Hyundai Steel has collected less income pursuant to its port usage rights than

contractually designed, meaning that *to its detriment*, Hyundai Steel is not

recouping its costs in constructing the port. *Compare* Appx05996 *with* Appx05976

(demonstrating that Hyundai Steel has collected less income pursuant to its port

usage rights than estimated in its contract with the GOK), *see also* Appx13359

(calculation of fees not collected by Hyundai Steel). Furthermore, like the

respondents in *GOSL* who, to their detriment, had to wait to be reimbursed for purchasing rubber at inflated prices, Hyundai Steel has to wait to recoup its investment costs over an extended period of time (nearly 42 years).

Second, the fact that the GOK did not require Hyundai Steel to build a port is not a relevant factor to the *GOSL* analysis. The respondent in *GOSL* was "not required to rely on locally-sourced rubber," *GOSL*, 308 F. Supp. 3d at 1379 n.3, but if it did, it was required to pay the above-market guaranteed price and wait to be reimbursed by the Government of Sri Lanka. It is thus plain that the rubber purchasing program in *GOSL* was not mandatory and the respondent was not required to participate. Here too, Hyundai Steel was not required to build the port and revert ownership to the GOK, but once it decided to build the port it had to wait to be reimbursed over a period of nearly 42 years.

## IV.   <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

Based on the foregoing, Plaintiff-Appellant Hyundai Steel Company

respectfully requests that the Court reverse the CIT's decision sustaining

Commerce's Final Results of Redetermination with instructions for the lower court

to remand the case to Commerce to correct the errors identified by the Court.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey
Stephen A. Morrison

**MORRIS, MANNING & MARTIN LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, D.C. 20036
(202) 216-4116

*Attorney for Plaintiff-Appellant*
*Hyundai Steel Company*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 24-1100

**Short Case Caption:** Hyundai Steel Co. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes 4354 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/26/2024            Signature: /s/ Brady W. Mills

                            Name: Brady W. Mills